## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------X
                                           :
JULIUS CEPHAS, PAUL CUTLER,                :
EMMETT FOSTER, AND SALLY                   :
CHAPMAN,                                   :
                 Plaintiffs,               :
                                           :
        v.                                 :
                                           :        Civil Action No. 16-cv-00316 (RGA)
INTERNATIONAL LONGSHOREMEN'S               :
ASSOCIATION, AFL-CIO, HAROLD J.            :
DAGGETT, WILLIAM ASHE, JR., AND            :
BRIAN WITIW,                               :
                                           :
                 Defendants.               :
--------------------------------------------------------X
```

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

MARRINAN & MAZZOLA MARDON, P.C
26 Broadway, 17th Floor
New York, NY 10004
Tel: (212) 425-3240
Fax: (212) 509-8952

*Pro Hac Vice Attorneys for Defendants*
*International Longshoremen's Association, AFL-CIO,*
*Harold J. Daggett, William Ashe, Jr., and Brian Witiw*

FREEDMAN AND LORRY, P.C.
1601 Market Street, Suite 1500
Philadelphia, PA 19103
Tel: (215) 931-2573
Fax: (215) 925-7516

*Local Counsel for Defendants*
*International Longshoremen's Association, AFL-CIO,*
*Harold J. Daggett, William Ashe, Jr., and Brian Witiw*

1003-437
58836

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT ................................................................................. 2

FACTS ............................................................................................................. 3

    A.   Parties ...................................................................................... 3

    B.   ILA's Constitutional Provisions ...................................................... 4

    C.   Prior Events .............................................................................. 5

    D.   The Charges .............................................................................. 6

    E.   The Hearing .............................................................................. 7

    F.   The Decision ............................................................................. 7

STANDARD FOR PRELIMINARY INJUNCTION ..................................................... 8

STATUTORY SCHEME ...................................................................................... 9

ARGUMENT .................................................................................................... 11

    A.   Plaintiffs were Given a Fair Hearing .............................................. 12

    B.   Plaintiffs Fail to Show By Clear and Convincing Evidence
        that the Trusteeship was Imposed for an Improper Purpose .............. 17

    C.   Plaintiffs Cannot Show Irreparable Harm ....................................... 19

    D.   The Balance of the Equities Militates in Favor of the Defendants ......... 20

CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1998) ........................................................................ 19

*Argentine v. United Steelworkers,*
   287 F.3d 476 (6th Cir. 2002) ..................................................................................... 18

*Bailey v. Dixon*, 314 F. Supp. 452 (E.D. La. 1970),
   *aff'd*, 451 F.2d 160 (5th Cir. 1971),
   *cert. denied*, 406 U.S. 945 (1972) .............................................................. 14, 15, 16

*Beacon Theatres v. Westover*, 359 U.S. 500 (1959) .................................................. 19

*Becker v. Indus. Union of Marine & Shipbuilding Workers,*
   900 F.2d 761 (4th Cir. 1990) .................................................................. 9, 12, 14, 15

*Boilermakers' Bldg. Ass'n v. Int'l Bhd. of Boilermakers*,
   No. 90-318-FR, 1990 U.S. Dist. LEXIS 17204 (D. Or. Dec. 13, 1990) ................. 15

*Brennan v. William Paterson Coll.*,
   492 Fed. Appx. 258 (3d Cir. 2012) ............................................................................. 9

*C.A.P.E. Local Union 1983 v. Int'l Bhd. of Painters*
   598 F. Supp. 1056 (D.N.J. 1984) ............................................................................. 18

*Dow v. United Bhd. of Carpenters*, 1 F.3d 56 (1st Cir. 1993) ..................................... 11

*Exec. Board Local 1302 v. United Bhd. of Carpenters,*
   477 F.2d 612 (2d Cir. 1973) ............................................................................. 11, 17

*Hardy v. Int'l Bhd. of Boilermakers,*
   682 F. Supp. 1323 (E.D. Pa. 1988) ........................................................................ 15

*Int'l Bhd. of Boilermakers v. Local Lodge D238,*
   678 F. Supp. 1575 (M.D. Ga. 1988),
   *aff'd*, 865 F.2d 1228 (11th Cir. 1989) ..................................................................... 21

*Int'l Bhd. of Boilermakers v. Local Lodge D461,*
   663 F. Supp. 1031 (M.D. Ga. 1987),
   *aff'd*, 835 F.2d 1439 (11th Cir. 1987) ..................................................................... 21

*Int'l Bhd. of Elec. Workers v. Eli*,
   307 F. Supp. 495 (D. Haw. 1969) ............................................................................ 18

*Local 144, Hotel, Hosp., Nursing Home & Allied*
  *Servs. Union v. Stern*, 165 F.3d 14, *reported in*
  1998 U.S. App. LEXIS 29434 (2d Cir. 1998) ..................................................... 10, 11

*Local 234 v. Transp. Workers Union*,
  131 F. Supp. 2d 659 (E.D. Pa. 2001) ..................................................... 8, 10, 14, 20

*Local 333 v. Int'l Longshoremen's Ass'n*, No. 15-0081,
  2015 U.S. Dist. LEXIS 147248 (D. Md. Oct. 30, 2015) ......................................... 16

*Local No. 48 v. United Bhd. of Carpenters*
  920 F.2d 1047 (1st Cir. 1990) ..................................................................................... 11

*McCann v. United Union of Roofers*, No. 04-3328
  2004 U.S. Dist. LEXIS 25603 (E.D. Pa. Dec. 20, 2004) ......................................... 18

*Mechs. Educ. Soc'y v. Local 6R,* No. 91-cv-1040,
  1991 U.S. Dist. LEXIS 15154 (N.D.N.Y. Oct. 18, 1991) ................................... 17, 18

*Morris v. Hoffa*, 361 F.3d 177 (3d Cir. 2004) ................................................... *passim*

*Nat'l Ass'n of Letter Carriers v. Sombrotto*,
  449 F.2d 915 (2d Cir. 1971) ............................................................................... 8, 9, 18

*Parks v. Int'l Bhd. of Elec. Workers*,
  314 F.2d 886 (4th Cir. 1963),
  *cert. denied*, 372 U.S. 976 (1963) ............................................................................. 18

*Pile Drivers, Carpenters, Bridge, Wharf & Dock Builders*
  *Local Union 34 v. N. Cal. Carpenters Reg'l Council*,
  992 F. Supp. 1138 (N.D. Cal. 1997),
  *aff'd*, 139 F.3d 905 (9th Cir. 1998) .................................................................... 20, 21

*Sawyers v. Grand Lodge Int'l Ass'n of Machinists*,
  279 F. Supp. 747 (E.D. Mo. 1967) ............................................................................. 18

*Schonfeld v. Raftery*, 271 F. Supp. 128 (S.D.N.Y. 1967),
  *aff'd*, 381 F. 2d 446 (2d Cir. 1967) ......................................................................... 15

*Tam v. Rutledge*, 475 F. Supp. 559 (D. Haw. 1979) ...................................................... 15

*Union de Empleados de Muelles de Puerto Rico, Inc.*
  *v. Int'l Longshoremen's Ass'n*, No. 15-1750 ,
  2015 U.S. Dist. LEXIS 176402 (D.P.R. Sept. 18, 2015) ......................................... 16

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ................................................. 19

*United Union of Roofers v. Composition Roofers Union, Local 30*,
   No. 03-CV-1699, 2003 U.S. Dist. LEXIS 6575 (E.D. Pa. Mar. 28, 2003) ........................... 8, 19

## Statutes

29 U.S.C. § 402(h) .................................................................................................. 20

29 U.S.C. § 462 ........................................................................................... 4, 10, 11, 22

29 U.S.C. § 464 ............................................................................................... 8, 16, 22

29 U.S.C. § 464(a) .................................................................................................. 21

29 U.S.C. § 464(c) ............................................................................................. *passim*

29 U.S.C. § 501 ..................................................................................................... 21

## Micsellaneous

S. Rep. No. 187, 86th Cong., 1st Sess. (1959),
   *reprinted in* 1959 U.S.C.C.A.N. 2318, 2333 ............................................................... 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
---------------------------------------------------------X
                                              :
JULIUS CEPHAS, PAUL CUTLER,                   :
EMMETT FOSTER, AND SALLY                      :
CHAPMAN,                                       :
                 Plaintiffs,                   :
          v.                                   :
                                              :
INTERNATIONAL LONGSHOREMEN'S                  :      Civil Action No. 16-cv-00316 (RGA)
ASSOCIATION, AFL-CIO, HAROLD J.               :
DAGGETT, WILLIAM ASHE, JR., AND               :
BRIAN WITIW,                                   :
                                              :
                 Defendants.                   :
---------------------------------------------------------X
```

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**NATURE AND STAGE OF PROCEEDINGS**

On April 25, 2016, after a two-day hearing, Defendant International Longshoremen's

Association, AFL-CIO ("ILA" or "International") imposed a trusteeship over one of its local

affiliates in Wilmington, Local 1694-1, ILA, AFL-CIO ("Local 1694-1").[1]  The ILA hearing

Committee had found that Local 1694-1's officers had violated their duty of fair representation

with respect to part-time employees in the bargaining unit by promoting relatives and friends

over more senior workers and then ignoring all grievances related to the questionable

promotions, choosing to hide behind ambiguous language in the contract.  The Committee

further found that when the ILA started asking questions, the Local's officers dragged their feet,

obfuscated, and otherwise impeded the investigation.  Then, on May 3, 2016, the ousted Local

officers brought this action against the ILA and International and District officers.  Plaintiffs

---

[1] The ILA has four affiliated local unions in Wilmington—Local 1694-1, Local 1694, Local 1883, and Local 1884.

allege four counts in their Complaint:  (1) that Defendants imposed the trusteeship for an improper purpose; (2) that Defendants imposed a trusteeship without a fair hearing; (3) that Defendants improperly imposed discipline on former Local 1694-1 President Julius Cephas; and (4) that Defendants breached the ILA Constitution by stripping Cephas of his right to run for office. (Compl. ¶¶ 89–140.)

Plaintiffs are seeking a preliminary injunction based upon Counts 1 and 2 of their Complaint—namely  that the trusteeship was not imposed after a fair hearing and was not imposed for a proper purpose—asking this Court to undo the trusteeship and restore Plaintiffs' control of the local.  This memorandum will establish that Plaintiffs are not entitled to an injunction under the clear legal standard set forth by the Third Circuit in *Morris v. Hoffa*, 361 F.3d 177 (3d Cir. 2004).  The two-day trusteeship hearing was full and fair, and the trusteeship was imposed for several purposes, any one of which is justified under the statute.

## SUMMARY OF ARGUMENT

This Court should deny Plaintiffs' Motion for Preliminary Injunction because Plaintiffs cannot establish a likelihood of success that Defendants denied them their right to a fair hearing or that the trusteeship was not established for a proper purpose.  Plaintiffs' motion uses smoke and mirrors to argue on the one hand, that the charges lacked specificity, but at the same time have no problem summarizing and opposing the allegations; Plaintiffs also claim that they were denied the right to cross-examination, when, in fact, they cross-examined each and every witness.  Plaintiffs were given notice of the charges and every opportunity to defend against the charges, but after hearing Plaintiffs' argument and references, the Committee found that they had violated their duty to Local 1694-1's membership by failing to enforce seniority consistently, discouraging members from attending union meetings, failing to address members' grievances, and refusing to help the ILA investigate these matters.  Plaintiffs cannot show how the hearing

was unfair and, therefore, the trusteeship is entitled to the statutory presumption of validity under the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 464(c).

Moreover, Plaintiffs fail to show by clear and convincing evidence that the trusteeship was imposed for an improper purpose.  Plaintiffs allege that the trusteeship was improperly imposed because the ILA ignored the efforts that Local 1694-1 undertook to amend the contract, and ILA Vice-President William Ashe had his own interests in the Port of Wilmington.  But what Plaintiffs ignore is that a trusteeship is presumed valid as long as a single valid purpose exists, despite other purposes that may not be valid.  *See Morris*, 361 F.3d at 189.  Therefore, even assuming the trusteeship was imposed for one of Plaintiffs' supposed "improper" purposes, Defendants imposed the trusteeship for several reasons, any one of which would justify the imposition of a trusteeship, *i.e.*, to apply the collective bargaining agreement fairly so that the words "relative ability" are not used as a cover-up for discrimination and favoritism; to remove officers that discourage members from attending meetings, penalize members when they file complaints, and hinder ILA investigations; and to restore democratic procedures and confidence in the local's leadership.

## FACTS

### A.    Parties

Defendant ILA is an international labor organization, which, with its affiliated districts and locals, acts as the collective bargaining representative for substantially all longshoremen and related waterfront employees engaged in the loading and unloading of ocean-borne cargo in thirty-six ports on the East and Gulf Coasts of the United States.[2]

---

[2] Documents in support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction are attached to the Affidavit of Thomas M. Little as Exhibits "1" through "21."  References to the Affidavit of Thomas M. Little will be cited as "Little Aff." and exhibits attached thereto will be cited as "Little Aff. Ex. ___."

Defendant Harold J. Daggett is the President of the ILA.  *Id.* ¶ 4.  Defendant William Ashe, Jr. is an ILA Vice-President and Defendant Brian Witiw is a Vice-President of the Atlantic Coast District of the ILA.  *Id.* ¶¶ 5, 6.  Both Ashe and Witiw were appointed as Trustees of Local 1694-1.  *See id.*

Local 1694-1 is an affiliated ILA local union located in Wilmington, Delaware.  Local 1694-1 is the exclusive bargaining representative for all crane operators, lift truck operators, laborers, mechanics, electricians, and janitors, including both part-time and full-time workers who are employed by the Diamond State Port Corporation ("DSPC").  (Little Aff. ¶ 7.)  The DSPC is a public entity affiliated with the State of Delaware, and responsible for the operation of the Port. *Id.*  Approximately 201 of the Local's 210 members are public employees.  *Id.*  Plaintiff Julius Cephas is the former president of Local 1694-1 and Plaintiffs Paul Cutler, Emmett Foster, and Sally Chapman are former members of Local 1694-1's Executive Board.  *Id.* ¶¶ 7, 8.

## B.    ILA's Constitutional Provisions

The provisions in the ILA Constitution governing trusteeships mirror those located in Section 302 of the LMRDA.  *See* 29 U.S.C. § 462.  Article XXI of the ILA Constitution allows the ILA to impose a trusteeship over a local union for one or more of the following reasons:

> (1) to correct corruption, (2) to correct financial malpractice, (3) to assure the performance of collective bargaining agreements, (4) to assure the performance of the duties of a collective bargaining representative, (5) to restore democratic procedures, or (6) otherwise to carry out the objects and purposes of the I.L.A.

(Little Aff., Ex. 1.)

Article XXI, Section 2, of the ILA Constitution provides that the ILA President is authorized to appoint a committee of the Executive Council to conduct a hearing to hear trusteeship charges.  (Little Aff. Ex. 1, at 7.)  The Constitution provides for notice to the affected parties and affords them the opportunity to appear and present evidence, witnesses, and

arguments.  The hearing committee then submits its findings and recommendations to the ILA Executive Council, which, upon a vote, has the power to authorize the President to impose a trusteeship and appoint a trustee.  *See id.*

## C.     Prior Events

As far back as July 2013, the ILA received numerous complaints from Local 1694-1 members about their seniority system and about the Local's failure to acknowledge and process seniority grievances.  (Little Aff. Ex. 16., at 11–13.)  Local 1694-1's seniority is governed by a collective bargaining agreement ("CBA") between Local 1694-1 and the DSPC.  (Little Aff. Ex. 16, at 23–24.)  This CBA split the employees into two seniority groups: (1) full-time employees with "A-list seniority" and part-time employees with "B-list seniority."  Union members complained that workers with so-called "B" seniority received lower pay and benefits than workers with "A" seniority.  (Little Aff. Ex. 16, at 7–17.)  Also, when promotions were made from "B" seniority to "A" seniority, they were made in an unfair fashion such that relatives and favorites of the union leadership were promoted while senior employees were left behind.  *See generally id.*  Moreover, Local 1694-1's members complained that their grievances were ignored by union leadership.  (*See generally id.*  Little Aff. Ex. 16.)

ILA Assistant General Organizer James Paylor attempted to investigate these complaints, but he was met with foot-dragging and obstruction from Local 1694-1's Executive Board and President Julius Cephas.  (Little Aff. Ex. 16, at 17.)  Because of the complete lack of cooperation, Paylor asked ILA Vice-President Ashe and ACD Vice-President Witiw to help him investigate. (Little Aff. Ex. 16, at 10.)  When Cephas and the Executive Board learned that Ashe and Witiw were planning to attend Local 1694-1's regularly scheduled membership meeting on September 8, 2015, the Executive Board began to discourage its members from attending and were outright hostile to Ashe and Witiw, going so far as to physically threaten them.  *Id.*

D.      **The Charges**

On September 25, 2015, twenty-three members of Local 1694-1 filed charges against Cephas and Local 1694-1's Executive Board alleging violations of Article XVIII, Section 1(b), of the ILA Constitution by discouraging members from attending the September 8, 2015 union meeting where members were planning to raise the issue of unfair and inconsistent application of seniority. (*See* Little Aff. Ex. 2.)    The charging members also alleged that Cephas and Local 1694-1's Executive Board had manipulated the seniority system for the benefit of a favored few to the detriment of "B" seniority list members. *Id.*

On November 24, 2015, ILA Vice-President Ashe and ACD Vice-President Witiw also submitted charges to the ILA, requesting the imposition of a trusteeship. (Little Aff. Ex. 7.)  The charges alleged that members of Local 1694-1 were being harmed because favorites were being promoted from the B-group to the A-group without regard to seniority in the industry. (Little Aff. Ex. 7, at 4.)  The charges further alleged that Cephas and the Executive Board willfully discouraged members from attending union meetings to discuss seniority complaints and that they had refused to cooperate with the investigations ordered by President Daggett. *Id.* at 5. Finally, the charges alleged that Cephas and the Executive Board had engaged in "dishonesty, misconduct, or conduct detrimental to the welfare of the ILA," because Cephas and the Executive Board had discouraged members from attending union meetings, had penalized members who complained about seniority, and had acted in a manner that showed "total disregard to their representational obligations." (Little Aff. Ex. 7, at 5–6.)  All charges sought the imposition of a trusteeship and the removal from office of Cephas and the Executive Board. *See id.* at 4 .

**E.      The Hearing**

President Daggett appointed ILA Vice-President Thomas Little and ACD Vice-President Bernard O'Donnell as a Committee to hear the charges.  (Little Aff. Ex. 3.)  The Committee noticed the hearing by sending several letters and copies of the charges to all interested parties. (Little Aff. Ex. 4, 5, 8, 9, 10, 12.)

After the Committee granted Plaintiffs several adjournments, the hearing took place over two days, on January 27 and 28, 2016, and resulted in an 800-page transcript.  (Little Aff. Ex. 13.)  The charging parties presented seven witnesses and sixty-four documents in support of their case.  *Id.*  The charged parties called nine witnesses to testify and submitted twenty-five documents. *Id.* The charged parties were represented at the hearing by counsel, but the charging parties were not.  *Id.*

**F.      The Decision**

On April 18, 2016, Little sent President Daggett the Committee's Report and Recommendations.  (Little Aff. Ex. 16.)  The Committee found that Cephas and other officers had used the contractual language as a smokescreen so that they could promote friends and favorites into group "A" while leaving many senior employees languishing in group "B" for years.  (Little Aff. Ex. 16, at 24–26.)  For example, Cephas' son spent only five years in group "B" and was transferred to the "A" group, while other members had spent twenty years or more in Group "B" with no hope of promotion.  *Id.* at 8–9.  The Committee further found that Cephas and the Local's leadership consistently ignored all grievances and complaints filed by members of group "B."   *Id.* at 24–26.  Also, the Committee found that Cephas and other Local officers actively impeded the ILA's investigation by dragging their feet and obfuscating facts.  *Id.*

The ILA Executive Council adopted the Committee's recommendations, imposed a trusteeship, and appointed Ashe and Witiw as Co-Trustees.[3]   On April 25, 2016, President Daggett informed Local 1694-1's Executive Board of the Executive Council's decision.  (Little Aff. Ex. 19.)

### STANDARD FOR PRELIMINARY INJUNCTION

Plaintiffs' request for an injunction undoing the trusteeship is in direct conflict with the procedure outlined in the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411–531.  The Plaintiffs have cited the usual common-law standard for the extraordinary relief of a preliminary injunction, but they conveniently fail to discuss the even higher standard they face in the context of a union trusteeship, in light of the statutory scheme established by Congress and the presumption of validity that union trusteeships enjoy under 29 U.S.C. § 464(c).   Under federal law, a trusteeship may only be disrupted for the exceptional circumstances specified in 29 U.S.C. § 464.   A heightened standard, therefore, is applied when a preliminary injunction is sought to enjoin a trusteeship.  *Nat'l Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915, 923 (2d Cir. 1971) (Congressional statutory scheme "clearly evidences an expectation that disputes over trusteeships would be litigated with the trusteeship in effect").   The district courts within this Circuit have adopted *Sombrotto's* reasoning.  *See, e.g.*, *United Union of Roofers v. Composition Roofers Union, Local 30*, No. 03-CV-1699, 2003 U.S. Dist. LEXIS 6575, at *12–13 (E.D. Pa. Mar. 28, 2003) (enforcing an international's trusteeship); *Local 234 v. Transp. Workers Union*, 131 F. Supp. 2d 659, 663 (E.D. Pa. 2001) (same).   Thus, the law is clear that when seeking preliminary relief to dissolve a

---

[3] On March 30, 2016, Mr. Newlin sent a letter to ILA President Daggett, requesting that Local 1694-1 be given an opportunity to submit a written response to the Committee's findings and recommendations.  President Daggett denied his request on April 5, 2016, stating that nothing in Article XXI (the trusteeship provision) or Article XVIII (the discipline provision) allowed any party to respond to a Committee's report.  (Little Aff. Ex. 14.)  President Daggett further informed him that it has never been the ILA's practice to do so.  *Id.*

trusteeship, the traditional four-factor test is modified by Section 304(c) of the LMRDA, 29 U.S.C. § 464(c).  *See also Sombrotto*, 449 F.2d at 922.

Plaintiffs also gloss over the different standard used when an injunction disrupts the status quo as opposed to preserving it.  The usual function of a preliminary injunction is to preserve the status quo pending a final determination on the merits.  *Brennan v. William Paterson Coll.*, 492 Fed. Appx. 258, 263 (3d Cir. 2012).  The reason is that a court must retain its ability to render a meaningful decision on the merits.  *Id*. at 263.  Here, however, Plaintiffs ask not to preserve the status quo (*i.e.,* to maintain the trusteeship); but to dissolve the trusteeship, reinstate the ousted officers, and allow Cephas to continue his reign unfettered despite the unfair treatment found by the hearing Committee.  Simply put, Plaintiffs' proposed preliminary injunction seeks the ultimate relief that Plaintiffs seek on the merits without having to prove their case at a hearing on the merits.

## STATUTORY SCHEME

As stated above, a presumption of validity attaches to trusteeships that are imposed for a limited duration and in a manner consistent with the procedural mandates of the LMRDA. *Morris v. Hoffa*, 361 F.3d 177, 187 (3d Cir. 2004); *Becker v. Indus. Union of Marine & Shipbuilding Workers,* 900 F.2d 761, 768 (4th Cir. 1990) ("Recognizing the delicate judgments which international officers are called upon to make in imposing a trusteeship and conscious of the relative inexpertness of outsiders, the [LMRDA's] guideline for evaluating a trusteeship supplies a presumption of validity, limited in duration, when certain procedural requirements are met."  (internal citations omitted)).  Accordingly, if this Court finds that Plaintiffs received proper notice and a fair hearing, then this Court must give the trusteeship the presumption of validity.

Section 302 of the LMRDA expressly authorizes a parent labor organization to impose a trusteeship "in accordance with [its] constitution and bylaws" over an affiliated local union "for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects" of the parent union.  29 U.S.C. § 462.  *See also Morris*, 361 F.3d at 186–87; *Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union v. Stern*, 165 F.3d 14, *reported in* 1998 U.S. App. LEXIS 29434 (2d Cir. 1998).  Congress, in enacting the trusteeship provisions of the LMRDA, intended that so long as the grounds for trusteeship satisfy the statutory prerequisites, there should be no grounds for judicial review as to the terms or conditions of the trusteeship.  *See* 29 U.S.C. §§ 461–66; *see also Stern,* 1998 U.S. App. LEXIS 29434, at *3.

Section 304(c) of the LMRDA, a companion provision to Section 302, serves to reinforce this point that, except in extraordinary circumstances, Congress intended to insulate trusteeships from judicial challenge.  This section unambiguously states that a trusteeship imposed for one of the statutory purposes, in accordance with the constitution and bylaws of the parent union, and after a fair hearing, "*shall be presumed valid*" for a period of 18 months.  29 U.S.C. § 464(c). During the 18-month period, the trusteeship "shall not be subject to attack except upon clear and convincing proof that [it] was not established or maintained in good faith for a purpose allowable under" the LMRDA.  *Id.*; *Transp. Workers Union,* 131 F. Supp. 2d at 662; *Stern*, 1998 U.S. App. LEXIS 29434, at *3.

The legislative history of these provisions confirms the statute's plain language insulating trusteeships from the sort of attack brought by Plaintiffs.  The LMRDA is rooted in the understanding that trusteeships "are among the most effective devices which responsible international officers have to ensure order within their organization" and that trusteeships are a

key safeguard "to prevent corruption, mismanagement of union funds, violation of collective bargaining agreements, . . . in short, to preserve the integrity and stability of the organization itself." S. Rep. No. 187, 86th Cong., 1st Sess. (1959), *reprinted in* 1959 U.S.C.C.A.N. 2318, 2333. The Committee further reported that it was not Congress's intention in regulating union trusteeships "to interfere in any way with the recognized authority and responsibility of a union to require compliance by subordinate organizations with all lawful and proper provisions of the Union's constitution and bylaws." *Id.* at 2362.

Thus, it is only on these narrow statutory bases that the LMRDA provides for a limited judicial inquiry into the imposition of trusteeship. Otherwise, "it is common ground that a labor union's internal affairs comprise an enclave best kept free from judicial intrusion." *Dow v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir. 1993) (citing *Local No. 48 v. United Bhd. of Carpenters,* 920 F.2d 1047, 1051 (1st Cir. 1990)).

"Courts have neither a monopoly on fairness nor a sufficient expertise in the administration of labor organizations to warrant pervasive judicial interference in the internal affairs of a union." *Local 48*, at 1051. In light of the presumption of validity, "judicial intervention should be undertaken with only the greatest care and caution." *Stern,* 1998 U.S. App. LEXIS 29434, at*3 (citing *Exec. Board Local 1302 v. United Bhd. of Carpenters,* 477 F.2d 612, 615 (2d Cir. 1973)).

### ARGUMENT

Plaintiffs allege that the ILA failed to provide them with a fair hearing prior to the imposition of the trusteeship pursuant to 29 U.S.C. § 464(c), and that the ILA's purpose for imposing the trusteeship was not a statutorily permissible purpose under Section 302 of the LMRDA, 29 U.S.C. § 462. Both these arguments are meritless.

### A.    Plaintiffs were Given a Fair Hearing

A fair hearing requires notice of the hearing and an opportunity to defend.  *Morris,* 361 F.3d at 187 (citing *Becker,* 900 F.2d at 768).  Specifically, as set forth in *Morris v. Hoffa*, 361 F.3d at 187, a trusteeship hearing is fair if it satisfies four requirements.  *Id.* (citing *Becker*, 900 F.2d at 768).  Plaintiffs' complaint alleges that only two of the four requirements were deficient in this case.[4]  (Compl. ¶¶ 110–17.)  First, Plaintiffs complain that the charges brought against them lacked specificity; second, Plaintiffs allege that they were denied the right to cross-examine their accusers.  Both these arguments are undermined by the record, as will be shown below.  Plaintiffs also raise two complaints about issues that are **not** requirements under Third Circuit law:  (1) Plaintiffs were not allowed to submit a post-hearing brief to the ILA Executive Council and (2) Plaintiffs' (incorrect) belief that certain officers had not abstained from the trusteeship vote.

The first deficiency alleged by Plaintiffs is based on *Morris*'s requirement that the notice given to the charged parties "should set out in writing the factual basis for alleged violations of law that justify imposition of a trusteeship."  *Morris*, 361 F.3d at 187.  As a result, Plaintiffs make the conclusory argument that they were confused about the accusations being brought against them.  Plaintiffs are unable to flesh out exactly why they were confused; and their assertion is belied by their behavior at the hearing.   The charges in this case were based on two

---

[4]  There are two additional elements of a fair hearing that are required by *Morris* that Plaintiffs do not challenge. *Morris* requires that the hearing notice must provide "the date, time, and location of the hearing and indicate that the local will have the opportunity to respond to the charges."  *Morris*, 361 F.3d at 187 (quoting *Becker*, 900 F.2d at 768). There is no issue about that here; there were six notices sent notifying all the interested parties of the date, time, and location of the hearing, and specifying that "all parties [would] have the opportunity to be heard and to present evidence." Indeed, Plaintiffs requested, and were granted, several adjournments.  (Little Aff. Ex. 4, 5, 8, 9, 10, 12.)  Another requirement of *Morris* that Plaintiffs are not disputing is that the party seeking a trusteeship must present evidence in support of its request.  *Morris* 361 F.3d at 187 (citing *Becker*, 900 F.2d at 769).  In this case, it is undisputed that the charging parties presented the testimony of seven witnesses together with sixty-four exhibits in support of their charges.  (Little Aff. ¶ 32.)

letters, one from the rank and file members, and one from the International officers.[5]  Together

both letters provided ample description of the alleged misconduct. (*See* Little Aff. Exs. 2, 7.)

The members' charges indicated that Cephas had deliberately cajoled members to skip the

membership meeting with Ashe and Witiw.  *Id.*  Specifically, they alleged that Cephas had

approached a member in the work lunchroom and instructed her not to attend the membership

meeting.  (*See* Little Aff. Ex. 2.)  The members' charges also said that members had complaints

about the inconsistent enforcement of seniority.  *Id.*

Ashe and Witiw's charges were lengthier and set forth specific examples of misconduct,

including unfairness towards the "B" group and attempts to impede the ILA's investigations.

(Little Aff. Ex. 7.)  The charges also stated Cephas and the Executive Board were discouraging

members from attending the union meeting, and that this was not the first time that the Executive

Board had discouraged members from participating in union meetings.  (Little Aff. Ex. 7, at 5.)

They also said that Executive Board members had penalized members who had filed charges

under the Local's by-laws.[6] *Id.*

These charges clearly notified the Local officers about the misconduct they were being

accused of.  Indeed, Plaintiffs' claim is undermined by their counsel's own statements at the

hearing.  In his opening statement Plaintiffs' counsel summarized the charges in a succinct

fashion:

---

[5] Moreover, both letters were hardly a surprise to Plaintiffs.  Both were based on the ILA's year-long investigation into the complaints raised by local members with "B" seniority.

[6] Based on these factual allegations, Ashe and Witiw charged Cephas and the Executive Board with "dishonesty, misconduct, [and] conduct detrimental to the welfare of the ILA" under Article XVIII of the ILA Constitution, failing to fulfill the terms and conditions of collective bargaining agreement, discouraging member participation in union meetings, and maintaining an unfair seniority system that is detrimental to "B" seniority members.  (Little Aff. Ex. 7.)  These charges requested that Executive Board members, including Cephas, be removed and that Local 1694-1 be placed in trusteeship.  (Little Aff. Ex. 7, at 3.)

> The whole case comes down to three issues: Contract language covering upgrading from B to A positions, whether President Cephas performed services for his compensation, and whether the Executive Board discourages member participation.

(Little Aff. Ex. 13, at 27.)  Clearly, Plaintiffs' counsel understood the charges.

Plaintiffs also raise *Morris's* requirement that a "local must be accorded an opportunity to cross-examine the international's witnesses and present rebuttal evidence." *Morris*, 361 F.3d at 187; *Becker*, 900 F.2d at 768; s*ee also Transp. Workers Union*, 131 F. Supp. at 664.  Plaintiffs' accusation that they were denied this right is belied by the evidence in the stenographic transcript of the hearing.  Even a cursory review of the transcript shows that Plaintiffs' counsel was allowed to cross-examine all the charging parties' witnesses **at length**.  (Little Aff. Ex. 13.)  The charging parties called seven witnesses whose testimony went on for approximately 570 pages of transcript, and whose testimony extended over the course of two days.  *See id.*  Of those 570 pages, 190 pages consisted of Plaintiffs' cross-examination of the charging parties' witnesses and of those 190 pages, 128 pages were devoted to the cross-examination of Paylor, whom Plaintiffs specifically claim they were denied the opportunity to cross-examine.  (Little Aff. ¶ 32.)  A complete copy of the hearing transcript is submitted for the Court's review as Exhibit 13 to the Little Affidavit.[7]

The transcript does show that the hearing committee occasionally objected to counsel's line of questions when it became argumentative, badgering, duplicative, or irrelevant.  But Plaintiffs cite no case where a party was found to have been denied the right to cross examine

---

[7]  The hearing transcript clearly shows that a fair hearing was conducted. This Court's review of the hearing transcript alone will support a denial of the preliminary injunction—without the need of additional testimony or evidence.  *See, e.g., Bailey v. Dixon*, 314 F. Supp. 452, 454 (E.D. La. 1970) ("But since this Court has concluded, after a thorough review of the record, that the decision and recommendation of the Trial Committee and the Executive Council were not without substantial evidence in support thereof, the trusteeship under which Local 1830 is presently operating is a valid trusteeship and thus the motions of the plaintiffs for a preliminary and/or permanent injunction and for summary judgment will be denied, and this suit will be dismissed on the merits. Judgment will be rendered accordingly."), *aff'd*, 451 F.2d 160 (5th Cir. 1971), *cert. denied*, 406 U.S. 945 (1972).

merely because the hearing tribunal made some evidentiary rulings.  Plaintiffs only cite to *Morris* and *Becker* for the proposition that cross-examination is required, but neither of these cases indicates that cross-examination is an unlimited right to badger a witness or seek information beyond the scope of the issues of the case.  *See generally Morris*, 361 F.3d at 186–89; *Becker*, 900 F.2d at 768.  Indeed, it is not proper for this Court to revisit the committee's evidentiary rulings as if the Federal Rules of Evidence applied.  Courts have, repeatedly emphasized that a fair union hearing need not conform to the strictures of a formal judicial trial, but rather be an "approximate effort to achieve its objectives."  *Tam v. Rutledge*, 475 F. Supp. 559, 569 (D. Haw. 1979); *Hardy v. Int'l Bhd. of Boilermakers,* 682 F. Supp. 1323, 1329 (E.D. Pa. 1988); *Boilermakers' Bldg. Ass'n v. Int'l Bhd. of Boilermakers*, No. 90-318-FR, 1990 U.S. Dist. LEXIS 17204, at *35 (D. Or. Dec. 13, 1990); *Schonfeld v. Raftery*, 271 F. Supp. 128 (S.D.N.Y. 1967), *aff'd*, 381 F.2d 446 (2d Cir. 1967).

Plaintiffs also argue that the ILA Committee should have provided them with a hearing transcript and a draft of the committee report so that they could submit an objection to the report before it was submitted to the ILA Executive Council.  Indeed, Plaintiffs' counsel wrote a letter to the ILA seeking the opportunity to submit a written objection to the Executive Council, and the ILA denied Plaintiffs' request.  (Little Aff. Ex. 15.)  The law does not require such a procedure.  *See Morris*, 361 F.3d at 187.  The ILA Constitution does not provide for such a procedure and it has never been allowed in practice.  *Bailey v. Dixon*, 314 F. Supp. 452 (E.D. La. 1970), *aff'd*, 451 F.2d 160 (5th Cir. 1971), *cert. denied*, 406 U.S. 945 (1972), makes clear that the ILA has followed this procedure for almost fifty years.  *Id.* at 453.  The procedure has always been for the ILA Executive Council to review the findings and recommendations of a committee without any opportunity for objection from **either** party.  (Little Aff. ¶ 36.)  In every trusteeship that has been reviewed by a court since then, no court has ever objected to the ILA Constitution's

procedure.  *See, e.g., Bailey*, 314 F. Supp. at 454; *see also Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n,* No. 15-1750, 2015 U.S. Dist. LEXIS 176402 (D.P.R. Sept. 18, 2015); *Local 333 v. Int'l Longshoremen's Ass'n*, No. 15-0081, 2015 U.S. Dist. LEXIS 147248 (D. Md. Oct. 30, 2015).

Lastly, Plaintiffs argue that the ILA denied them a fair hearing by permitting Paylor, Ashe, and Little to vote on the committee report at the Executive Council level.  Again, this argument is not based on any legal requirement in the statute or in the case law.  Regardless, the allegation, based upon "information and belief," is simply untrue.  Paylor, Little, and Ashe all abstained from voting on the report and recommendation on all charges.  (*See* Little Aff. ¶ 44, Ex. 18.)

A review of the transcript will show that that there is no factual basis to Plaintiffs' claim that they were denied a fair hearing.  Therefore, as *Morris* makes clear, where the trusteeship is established after a fair hearing and consistent with the constitution and bylaws of the international union, the trusteeship "shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith or for a proper purpose allowable under section 462 of this title."  361 F.3d at 187 (quoting 29 U.S.C. § 464(c)).[8]  Accordingly, Plaintiffs' arguments about the purpose of the trusteeship must be understood in the context of that deferential standard of review.

---

[8] The selection of the trustees, however unwelcome to the opposing faction of the local, in no way undermines the fairness of the proceedings.  Moreover, the identity of the trustee is not one of the grounds on which a trusteeship can be overturned.  29 U.S.C. § 464.  As to this, the International has complete discretion. The ILA has also retained Ralph Gerchak, the former District Director of the United States Department of Labor, Office of Labor-Management Standards for the District of New York.  (Little Aff. ¶ 47.)  Mr. Gerchak has over 22 years of experience with the democracy, management, and financial integrity of labor organizations, specifically in relation to international imposed trusteeships.  *Id.*  Mr. Gerchak assists the ILA in evaluating the financial status of the local union but also *footnote cont'd on next page . . .*

**B.      Plaintiffs Fail to Show By Clear and Convincing Evidence
that the Trusteeship was Imposed for an Improper Purpose**

Congress recognized that second-guessing the judgments culminating in trusteeships
would be both difficult and impractical.  Accordingly, a presumption of validity attaches to
trusteeships that are imposed for a limited duration and in a manner consistent with the
procedural mandates of the LMRDA.  29 U.S.C. § 464(c).  The mere fact that there are factual
disputes between the parties does not overcome the presumption of validity.  *Mechs. Educ. Soc'y
v. Local 6R,* No. 91-CV-1040, 1991 U.S. Dist. LEXIS 15154, at *17–18 (N.D.N.Y. Oct. 18,
1991).  That is because Congress established a presumption of validity by which courts are not to
overturn a trusteeship for the first eighteen months of its existence 'upon a question of fact or
degree of judgment as to the necessity for imposing it[.]'"  *Exec. Bd. Local 1302 v. United Bhd.
of Carpenters,* 477 F.2d 612, 615 (2d Cir. 1973).

Here, Plaintiffs fail to show by clear and convincing evidence that the trusteeship was
imposed for an improper purpose.  In their Complaint Plaintiffs allege that the trusteeship was
improperly imposed because the ILA could have intervened in collective bargaining without
imposing a trusteeship; that the ILA ignored the efforts that Local 1694-1 undertook, to amend
the CBA, and that ILA Vice-President Ashe had his own interests in the Port of Wilmington.

Even assuming for the sake of argument that the above-described motives for the
trusteeship were not proper ones, the trusteeship is still valid so long as there were other, valid
reasons.  The law is clear that only one valid purpose will suffice to justify a trusteeship, even if
another purpose is dubious.  *See Morris*, 361 F.3d at 188–89 ("Thus, even if we assume
*arguendo* that a Hoffa-Morris vendetta motivated Hoffa's efforts to oust Morris, Mack and

---

assists the appointed trustees in the fair and proper exercise of their duties.  *Id.*  In this case, he has already begun to
aid Trustees Ashe and Witiw in their evaluation of bank statements and Local 1694-1's past expenditures.

Fischer from Local 115, we are still left with the district court's conclusion that the hearing panel found numerous proper justifications for imposing the trusteeship."); *Sombrotto*, 449 F.2d at 923; *C.A.P.E. Local Union 1983 v. Int'l Bhd. of Painters*, 598 F. Supp. 1056, 1075 (D.N.J. 1984); *Int'l Bhd. of Elec. Workers v. Eli*, 307 F. Supp. 495, 506 (D. Haw. 1969); *Mechs. Educ. Soc'y*, 1991 U.S. Dist. LEXIS 15154, at *20 n. 4; *Parks v. Int'l Bhd. of Elec. Workers*, 314 F.2d 886, 906 (4th Cir. 1963) (improper motive to punish earlier litigation does not overcome the finding of motive to prevent unauthorized strike), *cert. denied*, 372 U.S. 976 (1963).  Here, the ILA had several reasons for imposing the trusteeship including (1) enforcing the collective bargaining agreement fairly so that the words "relative ability" are not used as a smokescreen for cronyism and favoritism; (2) removing from office those officers that discouraged members from attending meetings, penalized members when they filed complaints, and hindered ILA investigations; and (3) restoring democratic procedures and confidence in local union leadership.

The reasons for the trusteeship are on solid footing.  The courts have uniformly held that a trusteeship imposed to assure the performance of collective bargaining agreements is valid. *See also Argentine v. United Steelworkers,* 287 F.3d 476, 482 (6th Cir. 2002) (a trusteeship may be imposed to protect the negotiation process and "to prevent local officials from disrupting collective bargaining"); *McCann v. United Union of Roofers*, No. 04-3328, 2004 U.S. Dist. LEXIS 25603, at *17 (E.D. Pa. Dec. 20, 2004) (stating that a major reason for imposing trusteeship was to repair relationship with the neighboring contractors); *Sawyers v. Grand Lodge Int'l Ass'n of Machinists*, 279 F. Supp. 747 (E.D. Mo. 1967).

Plaintiffs try to paint themselves as victims: "The ILA ignored Cephas and the Executive Board's long struggle to institute seniority as the basis for upgrades and totally dismissed the difficult legal context in which its bargaining takes place."  (D.I. #4, at 5.)  However, Plaintiffs already made these arguments to the committee, and the committee rejected them.  Under the

deferential standard of review it is not proper for the Court to re-weigh evidence and second-guess the committee's findings of fact.  The committee found it suspicious that certain favored individuals, such as Cephas's son, were not barred from promotion by the relevant contractual language, while other less favored members seemed to be permanently held back by the same language.  Moreover, the committee found that many members had complained to Cephas and other Executive Board members but were ignored.  Likewise, when Paylor sought to help Local 1694-1 in its collective bargaining and processing of grievances, the committee found that Cephas prolonged and hindered those efforts.  These are all valid, good-faith reasons for the imposition of a trusteeship.  Plaintiffs have failed to prove by clear and convincing evidence otherwise.

## C.      Plaintiffs Cannot Show Irreparable Harm

Plaintiffs must show a threat of irreparable harm such that legal remedies are rendered inadequate.  *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1998) (citing *Beacon Theatres v. Westover*, 359 U.S. 500, 506–07 (1959)).  At the very least, Plaintiffs must demonstrate "that there exists some cognizable danger of recurrent violation" of their legal rights.  *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Here, Plaintiffs first cite to a case from the Southern District of New York for the proposition that being removed from elected office constitutes irreparable harm.  Not only does this not create a "recurrent violation" of their legal right, but a district court case from the Third Circuit has held the opposite.  In *United Union of Roofers v. Composition Roofers Union, Local 30*, No. 03-CV-1699, 2003 U.S. Dist. LEXIS 6575 (E.D. Pa. Mar. 28, 2003), the court held, "Irreparable harm to the individual Defendants is not a concern, because they may be compensated for any damages suffered as a result of their removal from Local 30 leadership positions."  *Id.* at *23.  Plaintiffs also cite to cases promoting a local union's self-determination

and damage to a local's reputation.  Such cases, however, ignore the fundamentals of Title III of the LMRDA.  The LMRDA allows a union to impose a trusteeship over a subordinate body, "whereby a labor organization **suspends the autonomy otherwise available to a subordinate body**."  29 U.S.C. § 402(h).  Congress foresaw that a local union's "self-determination" might impair collective bargaining or the rights of union members, thereby allowing an international union to take control of a local union, remove its officers, and repair the local's reputation in the community.  That is precisely the situation in this case.

**D.     The Balance of the Equities Militates in Favor of the Defendants**

Neither the third nor fourth factors of the preliminary injunction analysis support Plaintiffs' motion for an injunction.  First, as to balance of equities, Plaintiffs are required to show that the irreparable harm that Plaintiffs will suffer in the absence of the entry of a preliminary injunction outweighs any harm which granting injunctive relief would inflict on Defendants.  The ILA seeks to preserve the trusteeship over Local 1694-1 to avoid the reoccurrence of past biased enforcement and application of seniority in the Port as well as the inefficiencies in the collective bargaining by the former Local officers.  For these reasons, a mandatory preliminary injunction should not be granted and the status quo should be maintained, until a resolution on the merits of this litigation is reached.

The fourth factor in the preliminary injunction analysis also supports denying the injunction.  The public interest factor requires the Court to consider whether the public interest will be adversely affected if the injunction is granted.  "Federal labor statutes make it clear that a policy of judicial noninterference in internal union affairs fosters the public interest."  *Transp. Workers Union.*, 131 F. Supp. 2d at 669 (quoting *Pile Drivers, Carpenters, Bridge, Wharf & Dock Builders Local Union 34 v. N. Cal. Carpenters Reg'l Council*, 992 F. Supp. 1138, 1148

n.11 (N.D. Cal. 1997) (finding local not entitled to preliminary injunction to prevent trusteeship), *aff'd*, 139 F.3d 905 (9th Cir. 1998)).

Here, Local 1694-1 ignored complaints about the unfair seniority system and has been found guilty of enforcing seniority in an unfair and inconsistent manner.  Local 1694-1 has failed to cooperate with ILA officials in the investigation of seniority in the Port and has failed to strive for changes to the collective bargaining agreement that would have benefited its members. Denying the injunction will give the Trustees no greater authority than that conferred by the parties' Constitution.  *See Int'l Bhd. of Boilermakers v. Local Lodge D461*, 663 F. Supp. 1031, 1035 (M.D. Ga. 1987) (upholding trusteeship), *aff'd*, 835 F.2d 1439 (11th Cir. 1987). Therefore, rather than violating any public interest, upholding this trusteeship contributes "to the stability of labor organizations."  *Id.*; *see also Int'l Bhd. of Boilermakers v. Local Lodge D238*, 678 F. Supp. 1575, 1583 (M.D. Ga. 1988), *aff'd,* 865 F.2d 1228 (11th Cir. 1989).

The LMRDA provides explicit language that serves to protect local members from any harm that they may experience as a result of the trusteeship.  First, while the trusteeship is in place, local members retain their basic Title I rights and protections enumerated in the LMRDA. 29 U.S.C. §§ 411–15.  Second, now that the ILA has appointed an administrator who exercises autocratic control over the local, Plaintiffs have the protection of Section 501 of the LMRDA for any potential breach of fiduciary duty in the future.  29 U.S.C. § 501.  Finally, the trusteeship may be challenged by the Secretary of Labor if clear and convincing evidence indicates that it has been established or maintained for an improper purpose.  29 U.S.C. § 464(a).  *Local Union 34*, 992 F. Supp. at 1141–42.  Such a challenge is made by written complaint to the Secretary of Labor and if a violation is found, a complaint may be filed by the Secretary in federal court.  29 U.S.C. § 464(a).  Consequently, the need for a preliminary injunction is not warranted where Plaintiffs and other local members retain all the statutory rights they had before the trusteeship,

are protected from an unlawful trusteeship, and have a potential fiduciary claim against the trustee.

**CONCLUSION**

In light of the express language of Sections 302 and 304 of the LMRDA, the legislative history and the interpretation of those provisions by the federal courts, the court should deny Plaintiffs' request for a preliminary injunction.

Dated: New York, New York
      March 25, 2016

Respectfully submitted,

MARRINAN & MAZZOLA MARDON, P.C.    FREEDMAN AND LORRY, P.C.


_/s/ John P. Sheridan_               _/s/ Lance Geren_
John P. Sheridan                  Lance Geren
Christopher A. Lech             1601 Market Street, Suite 1500
26 Broadway, 17th Floor         Philadelphia, PA 19103
New York, NY 10004            Tele: (215) 931-2573
Tel: (212) 425-3240            Fax: (215) 925-7516
Fax: (212) 943-6649            lgeren@freedmanlorry.com
jsheridan@mmmpc.com
clech@mmmpc.com              _Local Counsel for Defendants_
                            _International Longshoremen's Association,_
_Pro Hac Vice Attorneys for Defendants_ _AFL-CIO, Harold J. Daggett, William_
_International Longshoremen's Association,_ _Ashe, Jr., and Brian Witiw_
_AFL-CIO, Harold J. Daggett, William Ashe,_
_Jr., and Brian Witiw_

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 25th day of May, 2016, a copy of the foregoing Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction, and supporting Affidavit and Exhibits, was served by the Court's electronic filing system on all parties of record.

*/s/Lance Geren*
LANCE GEREN