IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| JULIUS CEPHAS, PAUL CUTLER, EMMETT FOSTER, and SALLY CHAPMAN,<br><br>  Plaintiffs,<br><br>  v.<br><br>INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, HAROLD J. DAGGETT, WILLIAM ASHE, JR., and BRIAN WITIW,<br><br>  Defendants. | Civil Action No. 1:16-cv-00316-RGA |

## MEMORANDUM OPINION

Presently before the Court are Defendants' Motion for Summary Judgment (D.I. 70) and Plaintiffs' Motion for Partial Summary Judgment (D.I. 75). The issues are fully briefed. (D.I. 71, 76, 78, 79, 81, 83). For the reasons set forth below, I grant Defendants' Motion for Summary Judgment and deny Plaintiffs' Motion for Partial Summary Judgment.

I.  **BACKGROUND**

Plaintiffs are former local union officers of Local 1694-1, International Longshoremen's Association, AFL-CIO ("Local 1694-1"). (D.I. 71 at 1; D.I. 76 at 2). Plaintiff Julius Cephas is the former local President. (D.I. 76 at 3; D.I. 76-1 at ¶¶5-6). Local 1694-1 represents individuals working in cargo handling and warehousing functions at the Delaware State Port Corporation. (D.I. 76 at 2). On April 25, 2016, following a January 2016 hearing, Defendant International Longshoremen's Association, AFL-CIO ("ILA") imposed a trusteeship over Local

1694-1, removed all local officers, and barred Cephas from running for union office for three years. (D.I. 71 at 1; D.I 76 at 4-5). The ILA hearing committee (the "Committee") had found that Local 1694-1's officers had violated their duty of fair representation by maintaining an unfair and discriminatory seniority system. (D.I. 2-14 at 22). The Committee had further found that Local 1694-1's officers impeded an ILA investigation into complaints about the seniority system. (*Id.* at 24).

On May 3, 2016, Plaintiffs brought this action. (D.I. 2). They also moved for a temporary restraining order and preliminary injunction seeking to dissolve the trusteeship over Local 1694-1, reinstate Plaintiffs and other officers to their positions, and rescind the suspension of Cephas's right to run for office. (D.I. 1, 4). Plaintiffs contended that ILA imposed the trusteeship after an unfair hearing because they lacked notice and were denied the right to cross-examine witnesses. (D.I. 2 at 16). This Court heard and denied that motion on July 7, 2016. (D.I. 27).

On August 5, 2016, Plaintiffs filed an Amended Complaint alleging: (I) Defendants imposed the trusteeship for an improper purpose in violation of Section 302 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 462, (II) Defendants imposed a trusteeship without a fair hearing in violation of Section 304(c) of the LMRDA, 29 U.S.C. § 464(c), (III) Defendants improperly disciplined Cephas in violation of Section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5), and (IV) Defendants breached the ILA Constitution by barring Cephas from running for office for three years in violation of Section 301 of the LMRDA, 29 U.S.C. § 185. (D.I. 32 at 13-23).

On January 21, 2018, Cephas again sought a temporary restraining order, arguing that he was likely to succeed on Counts III and IV and requesting this court to "command[] defendants

to cease and desist interfering with [Cephas's] right to run for union office." (D.I. 61). This Court denied Cephas's motion. (D.I. 66). Local 1694-1 held an election on January 24, 2018. (D.I. 71 at 3). No local officer elections are scheduled prior to the expiration of Cephas's suspension on April 24, 2019. (D.I. 88 at ¶ 3).

Defendants filed a motion for summary judgment as to all of Plaintiffs' claims on April 27, 2018. (D.I. 70). Plaintiffs filed a motion for summary judgment as to Counts III and IV of the Amended Complaint on April 27, 2018. (D.I. 75). Briefing was complete on June 8, 2018. On August 9, 2018, noting the end of the trusteeship, this Court dismissed Counts I and II as moot. (D.I. 86).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party may discharge its burden by pointing out to the court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*,

476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

### III. DISCUSSION

#### A. Defendants' Motion for Summary Judgment

Defendants seek summary judgment that this Court lacks jurisdiction over Counts III and IV. (D.I. 71 at 22; D.I. 81 at 5). Alternatively, Defendants seek summary judgment that Counts III and IV fail on the merits. (D.I. 71 at 25, 28). The parties agree that there are no disputed material facts relating to the two remaining Counts. (D.I. 87, 88).

##### 1. Jurisdiction

Defendants argue that this Court does not have jurisdiction to hear Plaintiffs' remaining claims. Defendants assert, "Cephas does not seek *damages* for his alleged improper discipline, but the ability to *run* for office." (D.I. 71 at 23 (emphasis in original)). Defendants note that the exclusive avenue for challenging a union election is an administrative proceeding. (*Id.* at 23-24 (citing *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964)). Plaintiffs failed to address Defendants' jurisdictional argument in the initial briefing on this motion. (*See* D.I. 79). On request by the Court, Plaintiffs respond that their only desired remedy is "that the Court strike what remains of the three year ban on Cephas's right to run for office." (D.I. 88 at ¶4; *see also* D.I. 83 at 5).

Because Plaintiffs do not seek judicial intervention in an ongoing or past election, this Court has jurisdiction to resolve Plaintiffs' claims. As a general matter, under LMRDA Title I, "[w]here . . . the union's charges make reference to specific written provisions, § 101(a)(5)(A) . .

4

. empowers the federal courts to examine those provisions and determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense." *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 245 (1971). LMRDA Title IV limits a court's jurisdiction, however, when a member brings a Title I claim in the context of a union election. *Local No. 82 v. Crowley*, 467 U.S. 526, 543 (1984) ("[W]hether a Title I suit may properly be maintained by individual union members during the course of a union election depends upon the nature of the relief sought by the Title I claimants."). Similarly, when a claim related to trusteeships under LMRDA Title III implicates the validity of a union election, Title IV limits a court's jurisdiction. *See Bermingham v. Castro*, 1999 WL 644342, at *2 (9th Cir. Aug. 24, 1999) (finding no jurisdiction where a claim under Title III "would interfere with the Secretary of Labor's exclusive authority under 29 U.S.C. § 483 over union elections already conducted."); *see also Wooddell v. Int'l Bhd. of Elec. Workers Local 71*, 502 U.S. 93, 101-02 (1991) (allowing claims under Section 301 by union members against the international union for violations of the union's constitution). Title IV dictates that "responsibility for post-election suits challenging the validity of a union election [lies] with the Secretary of Labor." *Crowley*, 467 U.S. at 544. Nevertheless, a district court may properly resolve certain claims that may incidentally impact union elections. *See id.* at 541 n. 16, 546; *see also Michael v. Thompson*, 2008 WL 4593984 (N.D. Ohio, October 15, 2008) (finding no conflict with Title IV where "[t]here [was] nothing in the relief sought that would invalidate a completed election. Rather, the relief sought served only to stop a *future* change . . . .").

Plaintiffs do not seek a remedy that implicates the exclusive jurisdiction of the Secretary of Labor. Rather, as the sole remedy for Count III under Title I and Count IV under Title III, Plaintiffs ask that this Court strike the remainder of the ban on Cephas's running for office. This

remedy does not directly challenge the validity of a union election. The effect of a decision favoring Plaintiffs would impact elections, if at all, only incidentally and only in a future, yet unscheduled, union election. Therefore, this court properly has jurisdiction over this case.

### 2. Count III: LMRDA Title I

Cephas claims in Count III that he did not receive fair notice that he could be subject to discipline under Article XVIII of the ILA Constitution. If ILA did not provide the required notice, it would be in violation of Section 101(a)(5) of LMRDA. This section provides:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). Under this provision, charges must be "specific enough to inform the accused member of the offense that he has allegedly committed." *Hardeman*, 401 U.S. at 245. Notice is sufficient if the charges "contain[] a detailed statement of the facts relating to the [incident] that formed the basis for the disciplinary action." *Id.* Courts consistently interpret the requisite level of charge specificity as lower than the level needed for a criminal indictment. *See Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100*, 182 F.3d 1071, 1075 (9th Cir. 1999); *United States v. Int'l Bhd. of Teamsters*, 19 F.3d 816, 823 (2d Cir. 1994); *Curtis v. Int'l All. of Theatrical Stage Emps.*, 687 F.2d 1024, 1027 (7th Cir. 1982); *Kuebler v. Cleveland Lithographers*, 473 F.2d 359, 363 (6th Cir. 1973). Moreover, a union need not reference specific constitutional provisions to meet Section 101(a)(5)'s specificity requirement. *See Frye v. United Steelworkers of Am.*, 767 F.2d 1216, 1223 (7th Cir. 1985).

Cephas received written charges specific enough to comply with Section 101(a)(5). The September 26, 2015 charges brought by Alvin Jones and 22 Members of Local 1694-1 state, "The actions of . . . President Cephas violate or disrespect . . . **A[rt]icle XVIII, section 1.(b)**." (D.I. 76-3 (emphasis added)). Additionally, the November 24, 2015 charges brought by William Ashe and Brian Witiw state:

> In addition to Article XXI, Section 3, these charges are also being filed against Brother Cephas . . . in accordance with the following:
>
> 1. Under **Article XVIII, Section 1(b)**, Brother Cephas . . . engaged in "dishonesty, misconduct, or conduct detrimental to the welfare of the I.L.A."
>
> . . .
>
> 4. Brother Cephas . . . failed and refused to comply with the investigation directed by President Daggett dated August 19, 2015, and November 25, 2015.
>
> 5. Brother Cephas . . . willfully engaged in activity to deny the membership information and [has] discouraged member participation in union meetings.
>
> 6. Brother Cephas . . . maintained a seniority system that is not based on any objective standards and [has] failed to provide members with an explanation of how advancement through the seniority system can be achieved.

(D.I. 76-6 (emphasis added)). Cephas received the Jones charges in October 2015 and the Ashe and Witiw charges in November 2015. (D.I. 76 at 3). The union informed Cephas by letter dated December 19, 2015 that all charges would be heard at a consolidated hearing. (D.I. 76-7). It is undisputed that the charges refer to Article XVIII, the ILA constitutional provision authorizing discipline.[1] Article XVIII Section 1(b) states:

> Any member, officer, or representative of the I.L.A. or any of its subdivisions, **shall be subject to discipline** who is found guilty, after notice of and opportunity for hearing upon charges, as provided for in this Article, of violating any provision of this Constitution, or a decision of the Executive Council or of his local union, district council, or district organization, or of dishonesty, misconduct, or conduct detrimental to the welfare of the I.L.A.

---

[1] Cephas admitted the charges reference the disciplinary provisions during his deposition. (D.I. 78 at 12-13).

7

(D.I. 76-2 at 39 (emphasis added)).

The undisputed facts show that ILA provided Cephas with both the Jones charges and the Ashe and Witiw charges. These letters contain specific factual allegations that Cephas denied members information, discouraged member participation in meetings, maintained an unfair seniority system, and failed to explain the seniority system to members. (*See* D.I. 76-3: D.I. 76-6). Moreover, the letters reference the disciplinary provisions of the ILA Constitution. I find that the factual allegations coupled with the references to Article XVIII meet the Section 101(a)(5) requirement of "written specific charges."[2] Therefore, I grant summary judgment for Defendants on Count III.

### 3. Count IV: LMRDA Title III

Plaintiffs allege in Count IV that Defendants violated Section 301 of the LMRDA. Specifically, Plaintiffs allege (1) the Executive Council improperly imposed discipline on Cephas under Article XXI, (2) the Executive Council denied Cephas his ILA constitutional right of appeal, and (3) Cephas was not provided a copy of the Committee's report as required by the ILA Constitution. (*See* D.I. 76 at 14-16; D.I. 79 at 5-6). Section 301 authorizes union members to sue labor unions in their individual capacities for violations of union constitutions. *Wooddell*, 502 U.S. at 101-02; *see also* 29 U.S.C. § 185(a). When assessing alleged Section 301 violations, "courts typically defer to a union's interpretation of its own Constitution and will not override that interpretation unless it is 'patently unreasonable.'" *Exec. Bd. of Transp. Workers Union of Phila., Local 234 v. Transp. Workers Union of Am., AFL-CIO*, 338 F.3d 166, 170 (3d Cir. 2003).

---

[2] As this Court previously noted, "President Cephas was provided notice adequately for him to expect, . . . 'More than a private talking to or slap on the hand by union officials," . . . if he was found to have violated the charges." (*Transcript of TRO and Preliminary Injunction Motion*, D.I. 27 at 59 (quoting *Reilly v. Sheet Metal Workers' Int'l Assoc.*, 488 F. Supp. 1121, 1127 (S.D.N.Y. 1980)).

8

"[T]he standard is undeniably a high one as '[c]ourts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable.'" *Id.* (quoting *Local 334, United Ass'n of Journeymen v. United Ass'n of Journeymen*, 669 F.2d 129, 131 (3d Cir.1982)).

On the first alleged Section 301 violation, Plaintiffs argue, "the Executive Council's decision to strip Cephas of his right to run for office for three years as part of a[n Article XXI] trusteeship proceeding" was patently unreasonable. (D.I. 76 at 14). This argument depends on this Court finding that the Committee was not proceeding under Article XVIII during its hearing. As addressed above, the Committee properly heard all charges against Cephas under both Article XVIII disciplinary provisions and Article XXI trusteeship provision in a consolidated hearing. Therefore, ILA did not violate Section 301 of the LMRDA by disciplining Cephas.

On the second alleged Section 301 violation, Plaintiffs argue the ILA denied Cephas his right to appeal. Article XIX of the ILA Constitution governs appeals from decisions made pursuant to Article XVIII. (D.I. 76-2 at 42-44). Article XIX, Section 1(f) provides that a union member may appeal discipline imposed by the ILA Executive Council to the ILA Convention. (*Id.* at 43.). However, Article XIX, Section 6 provides, "If no regular or Special Convention of the I.L.A. is held before the expiration of the four (4) months of the date of the decision appealed from, the decision of the Executive Council on appeal shall be final and binding." (*Id.* at 44). The Executive Council decided to discipline Cephas in April 2016. (D.I. 76-1 at ¶29).[3] The next ILA convention will not occur until July 2019, more than four months after the date of the

---

[3] It is undisputed that the Executive Council conducted the hearing through an appointed committee in accordance with its constitution. *See* ILA Const. Art. XVIII, § 4 (D.I. 76-2 at 41); ILA Const. Art. XXI, § 2 (D.I. 76-2 at 47).

9

decision.[4] (*See* D.I. 76, Exh. B at 3). Therefore, the Constitution, as interpreted by the ILA, deems the decision "final and binding." Plaintiffs have failed to establish that ILA's interpretation of its Constitution is patently unreasonable. In fact, I would posit that it is the most reasonable reading of that provision. Because ILA's interpretation of its constitution is not at all unreasonable, it did not violate Section 301 by denying Cephas an appeal.

Finally, Plaintiffs argue that Cephas did not receive a copy of the Committee's report as required by the ILA Constitution. (D.I. 79 at 5-6). ILA Constitution Article XVIII, Section 4 provides: "Decisions shall be rendered after the close of the hearing and shall be in writing. A copy thereof shall be served by the Secretary of the body involved upon the accused and the accuser." (D.I. 76-2 at 41). The Constitution does not specify a time by which the accused must receive the written decision. (*See id.*). Article XVIII, Section 4 can reasonably be read to require service of the report within a reasonable time after the decision is rendered. Cephas requested a copy of the report by letter dated March 30, 2016. (D.I. 32-13). Plaintiffs admit that Cephas received a copy of the report in a letter dated April 25, 2016. (D.I. 76 at 5). The record is not clear on precisely when the Committee issued its report. Assuming the Committee authored the report at the earliest possible date, the date of the close of the hearing, a maximum of four months may have elapsed. ILA's position that the report may be served at some point after its issuance, even up to four months, is not a patently unreasonable interpretation of the ILA Constitution. As required by the ILA Constitution, Cephas received a copy of the written report within a reasonable time after the Committee rendered its decision. Therefore, ILA did not violate Section 301.

---

[4] ILA Conventions happen every four years. The last convention occurred in July 2015. (D.I. 76-2).

Because ILA did not violate LMRDA Section 301 in the process of suspending Cephas's right to run for office for three years, I grant summary judgment for Defendants on Count IV.

### B. Plaintiffs' Motion for Summary Judgment

Because this Court has granted Defendants' Motion for Summary Judgment on Counts III and IV, Plaintiffs' Motion for Partial Summary Judgment is dismissed as moot.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment is granted. Plaintiffs' motion for summary judgment is dismissed as moot. An order consistent with this opinion will follow.

_____
United States District Judge